UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

EDDIE R.,[1]

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____

6:20-CV-6707-LJV
DECISION & ORDER

On September 14, 2020, the plaintiff, Eddie R. ("Eddie"), brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2] Docket Item 1. On September 7, 2021, Eddie moved for judgment on the pleadings, Docket

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Eddie initially applied for both Supplemental Security Income ("SSI"), alleging disability beginning on August 2, 2009, Docket Item 11 at 249, and Disability Insurance Benefits ("DIB"), alleging disability beginning on June 8, 2015, *id.* at 247. He subsequently amended his alleged onset date to December 8, 2015, *id.* at 271, nearly twelve months after his disability insurance expired on December 31, 2014, *id.* at 272. With the amendment of the onset date, Eddie presumptively withdrew his claim for DIB. *See Monette v. Astrue*, 269 F. App'x 109, 111 (2d Cir. 2008) ("[The plaintiff's] disability insurance expired on June 30, 1997. Thus, [the plaintiff] would be eligible to receive disability insurance benefits if, but only if, he can demonstrate disability[] . . . before June 30, 1997.") (citing 42 U.S.C. § 423(c)). In any event, the decision of the Administrative Law Judge ("ALJ") addressed only Eddie's claim for SSI, *see* Docket Item 11 at 153, and Eddie's submission to this Court indicates that he no longer is pursuing a DIB claim, *see* Docket Item 12-1 at 2.

Item 12; on February 3, 2022, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 13; and on March 17, 2022, Eddie replied, Docket Item 14.

For the reasons that follow, this Court grants Eddie's motion in part and denies the Commissioner's cross-motion.[3]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the ALJ and refers only to the facts necessary to explain its decision.

unacceptable risk that a claimant will be deprived of the right to have [his] disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

Eddie argues that the ALJ erred in two ways. Docket Item 12-1. First, he argues that in formulating his mental residual functional capacity ("RFC"),[4] the ALJ "improperly evaluated" medical opinion evidence based on a "selective reading" of the record. *Id.* at 13. Second, he argues that the ALJ improperly evaluated his credibility and "failed to account for episodic symptoms" of his impairments. *Id.* at 27. This Court agrees that the ALJ erred and, because that error was to Eddie's prejudice, remands the matter to the Commissioner.

When determining a plaintiff's RFC, an ALJ must evaluate every medical opinion received "[r]egardless of its source." 20 C.F.R. § 416.927(c). But some opinions by their very nature deserve more weight than others. For example, an ALJ will give controlling weight to the opinion of a treating source if that opinion is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* § 416.927(c)(2).

---

[4] A claimant's RFC "is the most [he] can still do despite [his] limitations," 20 C.F.R. § 416.945, "in an ordinary work setting on a regular and continuing basis," *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 86–8, 1986 WL 68636, at *8 (Jan. 1, 1986)). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

An ALJ's RFC determination need not "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision," however.  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order).  "What is required is that the ALJ explain the bases for [the ALJ's] findings with sufficient specificity to permit meaningful review."  *Sewar v. Berryhill*, 2018 WL 3569934, *2 (W.D.N.Y. July 25, 2018).  So while the reviewing court will "not require that [the ALJ] have mentioned every item of testimony presented" in making a determination, *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam), the ALJ still must "confront the evidence in [the claimant's] favor and explain why it was rejected," *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016) (per curiam).

In formulating Eddie's mental RFC,[5] the ALJ gave "little weight" to the opinion of Eddie's treating psychiatrist, Odysseus Adamides, M.D., Docket Item 11 at 150, finding that Dr. Adamides's opinion "is not entirely consistent with the treatment received and the contemporaneous notes," *id.*  But the ALJ reached that conclusion, discounted Dr. Adamides's opinion, and formulated Eddie's mental RFC based on a selective review of the evidence that did not account for the episodic nature of Eddie's impairments.  Moreover, the ALJ provided only conclusory reasons for rejecting Dr. Adamides's opinion.  And those errors require remand.

---

[5] The ALJ found that Eddie has the mental RFC to perform light work as defined in 20 C.F.R. § 416.967(b) except that he "cannot interact with the public or perform tandem or teamwork.  Additionally, the claimant can adjust to occasional changes in work setting and make simple work[-]related decisions.  Lastly, the claimant can fulfill daily quotas or expectations—but he cannot maintain a fast-paced automated production line pace."  Docket Item 11 at 145-46.

4

Dr. Adamides completed a "mental impairment questionnaire" on June 19, 2018, based on his "weekly to biweekly" encounters with Eddie since July 7, 2015. *Id.* at 1001-1006. Dr. Adamides diagnosed Eddie with bipolar disorder characterized by "manic and depressive episodes," *id.* at 1001—episodes that are "difficult to manage" and "not always predictable," *id.* at 1004. Dr. Adamides also found that Eddie experiences "social anxiety" characterized by "high stress" in social settings. *Id.* And Dr. Adamides concluded that Eddie's impairments cause a "complete inability to function independently outside the area of [his] home." *Id.* at 1005.

The ALJ's decision acknowledged some of Dr. Adamides's specific opinions. For example, the ALJ noted that "Dr. Adamides checked boxes indicating that [Eddie] is unable to function or . . . meet competitive standards in the ability to maintain attention for two-hour segments, sustain an ordinary routine, or complete a normal workday/workweek without decompensation." *Id.* at 150. Likewise, the ALJ noted that Dr. Adamides found that Eddie could not "maintain regular attendance, work in conjunction with others, or set realistic goals[,]" and that he "would be absent from work more than four days per month." *Id.* The ALJ also noted Dr. Adamides's opinion that Eddie "is seriously limited in his ability to interact with the public or maintain socially appropriate behavior." *Id.*

But the ALJ then discounted Dr. Adamides's opinions for conclusory reasons. For example, the ALJ found that "[m]ental status exams do not reflect the degree of lim[i]tation opined," *id.* (citing *id.* at 1007-1009), but the ALJ never explained how. Similarly, the ALJ noted that "[e]ven during a reported manic period, the claimant was able to express coping methods and positive response," *id.* at 150 (citing *id.* at 1009),

5

but the ALJ never explained how or why those "coping methods and positive response" were sufficient to discount Dr. Adamides's opinion.[6]

The ALJ also erred by cherry-picking evidence to support her conclusions—that is, citing record evidence that might support the RFC while ignoring evidence to the contrary. *See Younes v. Colvin*, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) ("'Cherry picking' can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both") (citing *Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010) (per curiam)).  And there indeed was evidence supporting Dr. Adamides's opinion that the ALJ ignored.  For example, the ALJ apparently ignored Dr. Adamides's finding that although Eddie "responds positively to . . . support," Docket Item 11 at 1001, he "will likely continue to struggle with maintaining baseline and have continued episodes," *id.*, and that those episodes "are difficult to manage *when more intense*," *id.* at 1004 (emphasis added).  Likewise, the ALJ did not acknowledge that Eddie had suffered numerous episodes of decompensation[7] in the year before Dr.

---

[6] The ALJ's error is one that this Court sees repeated time and again in Social Security cases: ALJs note "improvement," or "stable" findings, or an ability to "cope" and therefore discount opinions with significant limitations.  But just because a claimant's condition has improved or the claimant has developed ways to cope with certain physical or mental issues does not belie a finding of disability.  Even significant improvement from serious limitations might leave a claimant severely limited.  So more than simple "improvement" or "coping" is necessary to support a finding that limitations found by a medical provider are unsupported by the evidence.

[7] The report defined "episodes of decompensation" as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence[,] or pace. Episodes of decompensation may be demonstrated by an exacerbation of symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." Docket Item 11 at 1005.

Adamides's June 2018 report.  *See id.* at 1005 (Eddie suffered "[f]our or [m]ore" episodes of decompensation "within [the] 12[-]month period").  So although during a single "manic episode," *id.* at 1009, Eddie was able to use coping methods and felt "better than being low," *id.*, that is not at all inconsistent with experiencing episodes of "inconsistent fluctuations in behavior, attitude, and cognitive abilities," *see id.* at 1004, or with the limitations about which Dr. Adamides opined.

Moreover, the ALJ relied on a single instance—a "reported manic period" when Eddie "was able to express coping methods and positive response," *id.* at 150—to discount Dr. Adamides's opinion about Eddie's "degree of lim[i]tation," *id.*[8]  But as the Second Circuit has observed, "[c]ycles of improvement and debilitating symptoms of mental illness are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) (alteration and citation omitted).  And "[w]hen viewed alongside the evidence of the apparently cyclical nature" of Eddie's mental impairments, the "cherry-picked treatment notes" cited by the ALJ "do not provide 'good reasons' for minim[]izing [Dr. Adamides's] opinion."  *See id.*

---

[8] In fact, the "positive response" to "coping methods" that the ALJ cited, Docket Item 11 at 150, was hardly evidence of Eddie's ability to work.  The specific positive response to which the ALJ referred involved Eddie "feeling more confident out in public" and being able to "spen[d] 45 minutes in [T]arget with his wife, [without] experiencing distress."  *See id.* at 1009 (cited by the ALJ at *id.* at 150 as "Exhibit 23F/3").  But tolerating 45 minutes in a department store does not suggest a concomitant ability to work on a regular basis.  If anything, the fact that Eddie was pleased with that small success suggests just the opposite.

7

The ALJ also erred by rejecting the opinion of a treating physician without appropriate deference—that is, by violating the "treating physician" rule.[9]  Under the rule, the ALJ must "explicitly consider" the so-called "*Burgess* factors" from *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008), before giving less-than-controlling weight to a treating source's opinion.  See *Estrella*, 925 F.3d at 95.  Those factors include "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[ ] (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (per curiam) (quotations and alteration omitted).  "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight" to a treating source opinion "is a procedural error." *Estrella*, 925 F.3d at 96 (quoting *Selian v. Astrue*, 708 F.3d 409, 419-20 (2d Cir. 2013) (per curiam)).

Here, the ALJ acknowledged that Dr. Adamides was a psychiatrist, Docket Item 11 at 150, but she did not address the length or frequency of Dr. Adamides's treatment.  And even more significantly, the ALJ failed to note "the amount of medical evidence supporting [Dr. Adamides's] opinion" and "the consistency of the opinion with the remaining medical evidence."  See *Greek*, 802 F.3d at 375.

For example, the ALJ failed to address the significant similarities between Dr. Adamides's findings and the opinions of consultative examiner Yu-Ying Lin, Ph.D., *see*

---

[9] Because Eddie's claim was filed before March 27, 2017, the so-called "treating-physician rule" applies in this case.  See *Montes v. Comm'r of Soc. Sec.*, 2019 WL 1258897, at *2 n.4 (S.D.N.Y. Mar. 18, 2019) ("The Social Security Administration adopted regulations in March 2017 that effectively abolished the treating physician rule; however, it did so only for claims filed on or after March 27, 2017. . . . The plaintiff filed [his] claim before March 27, 2017.  Thus, the treating physician rule under the previously existing regulations applies.").

Docket Item 11 at 411-15, and state agency consultant K. Lieber-Diaz, Psy.D., *see id.* at 119-131. All three providers found that Eddie is limited in interacting with others. *Compare id.* at 1002, 1003, 1004, 1005 (Dr. Adamides opined that Eddie suffers from "[i]ntense and unstable interpersonal relationships," has "[e]xtreme" difficulty in "maintaining social functioning," and is "[s]eriously limited" in the ability to "[g]et along with co-workers or peers without . . . exhibiting behavioral extremes" and to "[m]aintain socially appropriate behavior"), *with id.* at 414 (Dr. Lin opined that Eddie is "moderately limited in relating adequately with others"), *and id.* at 128 (Dr. Lieber-Diaz opined that Eddie is "[m]oderately limited" in "interact[ing] appropriately with the general public" and "maintain[ing] socially appropriate behavior."). And all three providers agreed that Eddie would have problems maintaining a regular work schedule. *Compare id.* at 1003 (Dr. Adamides's finding that Eddie has "[n]o useful ability" to "[m]aintain regular attendance and be punctual within customary, usually strict[,] tolerances," and is "[u]nable to meet competitive standards" in sustaining "an ordinary routine without special supervision" or in completing "a normal workday and workweek without interruptions from psychologically based symptoms"), *with id.* at 414 (Dr. Lin's finding that Eddie is "moderately limited in . . . maintaining a regular schedule"), *and id.* at 128 (Dr. Lieber-Diaz's finding that Eddie is "[m]oderately limited" in the ability to "perform activities within a schedule, maintain regular attendance," "be punctual within customary tolerances," and "complete a normal workday and workweek without interruptions from psychologically based symptoms"). But instead of acknowledging the similarities

9

among those opinions, the ALJ discounted all three.[10]  The ALJ therefore did not sufficiently consider "the amount of medical evidence supporting [Dr. Adamides's] opinion" or "the consistency of the opinion with the remaining medical evidence."  *See Greek*, 802 F.3d at 375.

The Commissioner argues that the "treatment notes" and "mostly normal mental status findings[] clearly support the ALJ's decision to give little . . . weight to the opinion[] of [Dr.] Adamides."  *See* Docket Item 13-1 at 15.  But other than that *ipse dixit*, the Commissioner offers little support for that conclusion.  For example, the Commissioner observes that during Eddie's examination by Dr. Lin, Eddie "exhibited a cooperative attitude, appropriate eye contact, clear speech, coherent thought processes, no hallucination[s] or delusions, [and] full orientation."  *Id.*  But the Commissioner does not even attempt to explain why those positive findings are inconsistent with Dr. Adamides's opinion that Eddie had "extreme difficulties in maintaining social functioning[,] marked difficulties in maintaining concentration," and "complete inability to function independently outside the area of [his] home."  *See id.* at 12-13.  Nor does the Commissioner suggest why those positive findings by Dr. Lin are inconsistent with Dr. Lin's opinion that Eddie was "moderately to markedly limited in

---

[10] The ALJ assigned "little weight" to the opinion of Dr. Lieber-Diaz.  Docket Item 11 at 150 (refers to the "state agency consultant's assessment" at "Exhibit 3A" corresponding with Dr. Lieber-Diaz's report at Docket Item 11 at 119-131).  The ALJ did not assign any particular weight to the opinion of Dr. Lin, *see id.* at 149, but both sides suggest that the ALJ must have given "some weight" to Dr. Lin's opinion, *see* Docket Item 13-1 at 14 (Commissioner's memorandum of law) ("The ALJ appears to give Dr. Lin's opinion some weight . . ."); Docket Item 12-1 at 13-14 (Eddie's memorandum of law) ("The ALJ accorded [the opinion of] . . . Dr. Yu-Ying Lin 'some' weight.").

making appropriate decisions and appropriately dealing with stress" or "moderately limited in relating adequately with others."  *See id.* at 14.

In other words, like the ALJ, the Commissioner seems to assume that if one is cooperative and oriented, maintains eye contact, speaks clearly, thinks coherently, and does not hallucinate or have delusions, that person can obviously work—especially when the record shows stability or improvement.  *See, e.g., id.* at 13-14 (Commissioner's memorandum of law); Docket Item 11 at 149-50 (ALJ's decision).  But someone who has normal findings in most mental health areas still may be unable to concentrate or to deal with stress;[11] someone who is "stable" or "improved" still may be unable to work with others.  In fact, that is precisely what Dr. Adamides—and to a lesser extent, Dr. Lin—found as to Eddie here.  In disagreeing with those opinions by citing the

---

[11] Both Dr. Adamides and Dr. Lin opined that Eddie has significant limitations in managing stress.  *See* Docket Item 11 at 1003, 1004 (Dr. Adamides opined Eddie is "[u]nable to meet competitive standards" in dealing with "normal work stress," "has increased challenges with stress management" during his episodes, and experiences "high stress" in social situations); *id.* at 414 (Dr. Lin opined Eddie is "moderately to markedly limited in appropriately dealing with stress").  The ALJ purported to account for those limitations in Eddie's RFC by addressing Dr. Lin's findings.  *See id.* at 149 ("[B]y reducing the interactions, changes in work setting, and levels of decision-making [in the RFC], the claimant will have less stress.  Further, reducing the pace to a more flexible rate affords [Eddie] a way to lessen his stress.  Thus, the supported aspects of Dr. Lin's assessment have been addressed.").  But that generalized assessment did not include the sort of specific and detailed findings about stress that courts have found sufficient.  *See, e.g., Stadler v. Barnhart*, 464 F. Supp. 2d 183, 188-89 (W.D.N.Y. Dec. 11, 2006) (citing SSR 85-15, 1985 WL 56857, at *6 (Jan. 1, 1985)) (The Commissioner did not address the treating physician's opinions about the claimant's "difficulties dealing with stressful work environments" and failed to "make specific findings about the nature of [the] claimant's stress, the circumstances that trigger it, and how those factors affect his ability to work.").  On remand, the ALJ should address Eddie's stress in detail and explain how and why limitations in the RFC address the stress-related issues about which the medical professionals opined.

11

relatively normal findings with respect to some aspects of Eddie's mental health, both the ALJ and the Commissioner substitute their lay opinions for the medical opinions in the record.  *See, e.g., McBrayer v. Sec'y of Health & Hum. Servs.*, 712 F.2d 795, 799 (2d Cir. 1983) ("[T]he ALJ cannot arbitrarily substitute [the ALJ's] own judgment for competent medical opinion"), *Fuller v. Astrue*, 2010 WL 3516935, at *5 (W.D.N.Y. Sept. 7, 2010) ("[A]n ALJ is not free to substitute [the ALJ's] own lay opinion for opinions from treating sources.").  And they cherry-pick from the medical evidence to do even that.

Apart from, and in addition to, the ALJ's errors in evaluating Dr. Adamides's opinion, the ALJ also erred by cherry-picking evidence to formulate Eddie's mental RFC.  For example, the ALJ found that Eddie's mental impairments were not disabling because, *inter alia*, his anxiety was "under control" and "'clinically stable' with medication," *see* Docket Item 11 at 150 (citing *id.* at 1015, 1159); *id.* at 147.  But in the same report where Eddie "stated his anxiety is under control," *id.* at 1015, he also reported debilitating anxiety while in public settings, *id.* (Eddie "stated that he feels like people are watching him decompose and wants to flee the store or place [where he] is" and that he had attended his father's funeral "but could not go to the burial because he was distressed by all the people.").  So the evidence cited by the ALJ is selective and skewed.

What is more, while there is some evidence supporting the ALJ's conclusion that Eddie's symptoms are "stable" and "controlled," *see id.* at 147 (citing *id.* at 356, records from November 2015, and *id.* at 1159, records from December 2016), the record is replete with evidence suggesting just the opposite, *see, e.g., id.* at 413 (February 2016 record noting that Eddie was displaying "[a]nxious" affect during examination and that

his "recent and remote memory skills" were "moderately impaired due to anxiety"); *id.* at 1012 (March 2016 record noting that Eddie "still has depressive symptoms that come and go but [are] not consistent"); *id.* at 1018 (February 2016 record noting that Eddie was feeling "a sense of anxiety[] not related to a stressor"); *id.* at 1024 (December 2015 record observing that Eddie "is having consistent anxiety"); *id.* at 1084 (March 2018 record discussing "syndrome of depression" that is "recurrent" with "risk for relapse" and "need for routine monitoring and assessments"); *id.* at 1131 (May 2017 record indicating that Eddie was "feel[ing] like he experiences more mood swings"). But the ALJ ignored evidence that Eddie's symptoms continued to be significant and cherry-picked instances of relative improvement to find that Eddie was not disabled. That was error as well. *See Starzynski v. Colvin*, 2016 WL 6956404, at *3 (W.D.N.Y. Nov. 29, 2016) ("It is plainly improper for an ALJ to cherry-pick evidence that supports a finding of not-disabled [sic] while ignoring other evidence favorable to the disability claimant.")

In sum, the ALJ erred in her assessment of Dr. Adamides's opinion and by cherry-picking evidence to support the RFC. On remand, the ALJ should evaluate the opinions of any treating providers consistent with the treating physician rule and should fairly evaluate and cite all the relevant medical evidence—not simply the evidence that supports the ALJ's conclusions.[12]

---

[12] This Court does not address Eddie's remaining arguments concerning the ALJ's physical RFC determination "because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 13, is DENIED, and Eddie's motion for judgment on the pleadings, Docket Item 12, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.


SO ORDERED.

Dated:	September 6, 2022
	Buffalo, New York


					 */s/ Lawrence J. Vilardo*
					LAWRENCE J. VILARDO
					UNITED STATES DISTRICT JUDGE